IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 09-27801 HRT |
| GREG MATTHEW ROLLISON ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| ) | |
| KELVIN KNAUB ) | Adversary No. 10-1476 MER |
| HOLLY KNAUB ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| GREG MATTHEW ROLLISON ) | Signed/Docketed |
| ) | March 28, 2013 |
| Defendant. ) | |

**ORDER**

THIS MATTER comes before the Court following the trial on the issue of damages on the *Complaint to Determine Dischargeability of Plaintiffs' Claims Pursuant to 11 U.S.C. § 523*, and the Court's Order dated May 15, 2012, finding the debt of the Defendant to the Plaintiffs to be nondischargeable.

**JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because it involves a determination as to the dischargeability of a particular debt under 11 U.S.C. § 523(a)(2)(A).[1]

**BACKGROUND**

Debtors Robert and Annelle Golba (the "Golbas") filed their voluntary Chapter 7 petition on April 28, 2009. Debtor-Defendant Greg Rollison ("Rollison") filed his voluntary Chapter 7 petition on August 27, 2009. Plaintiffs Kelvin and Holly Knaub (the "Knaubs") filed Adversary No. 09-1551-MER against the Golbas and several related entities on September 11, 2009, and filed the

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

instant Adversary No. 10-1476-MER against Rollison on July 1, 2010. Annelle Golba was dismissed as a party defendant from Adversary No. 09-1551-MER on October 20, 2010.

The two adversary proceedings were consolidated for purposes of trial. Later, the Court issued an amended order regarding consolidation, indicating the adversary cases would proceed in parallel, but not be substantively consolidated. The Court ordered the dischargeability claims of the two adversary cases would be heard first, with the damages portion, if necessary, to be heard at a later time.

On May 15, 2012, the Court entered its written opinion determining the following: 1) the Knaubs' claims against Robert Golba under § 523(a)(2)(A) were denied and dismissed; 2) the Knaubs' claims against Rollison under § 523(a)(4) were denied and dismissed; and 3) the debt of Rollison to the Knaubs is nondischargeable under § 523(a)(2)(A). The Court expressly stated it "will set a hearing on damages by separate order, after which a final judgment may enter on that claim."[2]

In connection with the damages trial, the parties submitted a Joint Pre-Trial Statement[3] and stipulated to the following: 1) the Knaubs purchased the property at issue in this matter on May 1, 2003; and 2) at the relevant time, the difference between the actual value of the Knaubs' home, with its defects, on the date of the purchase of the home, and the purchase price paid by the Knaubs for the home believing it to be without defects is represented by the sum of $162,000.[4] At the conclusion of the damages trial, the Court authorized the parties to submit any additional authority for consideration on the issues of prejudgment interest and attorney fees and costs, on or before February 8, 2013. Rollison and the Knaubs did not file any supplemental briefs. The Court, having reviewed the evidence and considered the arguments of counsel, is prepared to rule on the issue of damages.

---

[2] Order, Docket No. 58.

[3] Joint Pre-Trial Statement, Docket No. 76.

[4] Pursuant to the stipulation of the parties, at the subsequent trial on damages the Court admitted into evidence all exhibits previously admitted in the proceeding on dischargeability.

## DISCUSSION

### A.     Elements of Claims Under § 523(a)(2)(A)

Because the issue of damages is intertwined with the elements of § 523, a review of all the elements is instructive. Section 523(a)(2)(A) provides in pertinent part as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . .[5]

With respect to the nondischargeable debt owed by Rollison to the Knaubs, the Court held as follows:

> Accordingly, the Court finds Rollison made false representations as to his ability to perform on his agreement to build the Knaubs a replacement house, knowing such representations to be false, with the intent to deceive the Knaubs into believing such performance would take place. In addition, Mrs. Knaub's testimony indicates the Knaubs justifiably relied on the representations, because their previous experience had shown willingness by Gemm or Avalon, at least following an attorney's letter, to attempt to fix their home's problems, and later to offer them a replacement home. Further, the Knaubs suffered damages, in an amount to be determined in the future, arising from problems with a defective home. Thus, as to Rollison, the Knaub's debt is nondischargeable under § 523(a)(2)(A).[6]

The Knaubs established each element of § 523(a)(2)(A), and the remaining issue before the Court is to determine the amount of damages.

---

[5]  § 523(a)(2)(A).

[6]  Order, Docket No. 58.

**B.     Calculation of Damages Under Section 523(a)(2)(A)**

The Knaubs seek entry of a judgment awarding nondischargeable damages against Rollison in the nondischargeable amount of $162,000.00, plus attorney fees and costs, prejudgment interest at the rate of 8% per annum from May 1, 2003, through May 15, 2012, and post-judgment interest at the rate of 8% per annum.

Rollison stipulated he does not oppose post-judgment interest at the statutory rate,[7] and at trial did not challenge the Knaub's calculation of the principal amount of damages ($162,000) calculated pursuant to *Mascio v. Gronewoller (In re Mascio)*, 454 B.R. 146 (D. Colo. 2011). However, Rollison opposes any award of prejudgment interest, and asserts an award for attorney fees and costs is improper.

   *1.     The Underlying Debt is Nondischargeable*

The damages sought in this case arise from Rollison's false representations to the Knaubs regarding the future replacement of their home. The proper measure of damages within the § 523 context has been reviewed at length in several opinions in the case of *In re Mascio*.[8] In *Mascio*, with respect to property regarding which fraud or misrepresentation has been shown, the United States District Court for the District of Colorado (the "District Court") stated:

> Under Colorado law, [the plaintiff] is entitled to receive "the difference between the actual value of the property *at the time of purchase* and its value at that time had the representation been true." . . . Under Colorado law, values prior to or subsequent to the date of payment are irrelevant. . . . [I]t was error for the Bankruptcy Court to consider evidence of value at times other than the date of purchase.[9]

---

[7] *See* Joint Pre-Trial Statement, Docket No. 76.

[8] *Gronewoller v. Mascio* (*In re Mascio*), 2007 WL 3407516 (D. Colo. 2007).

[9] *Mascio v. Gronewoller* (*In re Mascio*), 454 B.R. 146 (D. Colo. 2011); *see also In re Tani*, No. 09-17880-MER, 2012 WL 2071766 (Bankr. D. Colo. June 8, 2012) (applying the *Mascio* standards). Further, the District Court stated:

> Under Colorado law, "the measure of damages in [fraud] cases is the 'benefit of the bargain' rule, designed to give a plaintiff his or her expectation interest for loss of bargain." *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 n. 5 (Colo. 1994). Thus, a plaintiff is entitled to receive "the difference between the actual value of the property and what its value would have been had the representation been true." *Otis & Co. v. Grimes*, 97 Colo. 219, 48 P.2d 788, 791 (1935).

At trial, counsel for Rollison conceded the proper measure of damages in this case is governed by the "benefit of the bargain" rule articulated in *In re Mascio*. As mandated by the District Court in *Mascio*, and as agreed by the parties at trial, the proper measure of damages is the difference between the actual value of the property at the time of purchase and its value at that time had the representation been true. Values subsequent to the date of payment are irrelevant.[10]

Here, the Knaubs purchased the home for $259,000 on May 1, 2003.[11] Rollison's misrepresentation, made in the spring of 2007, was he would build the Knaubs a replacement home of the same value as the original purchase price of the defective home ($259,000). The statement recognizes the Knaubs had not received what they had bargained for in 2003 - a house without defects. If Rollison's representation had been true, the Knaubs would have received a replacement house worth, according to Rollison, $259,000.

The Court acknowledges the instant matter presents a unique set of facts because the purchase date of the home precedes the date of Rollison's misrepresentation. However, Rollison represented to the Knaubs in 2007 he would replace their defective home for a house of **the same value as the original purchased home**. Thus, on the facts of this case, the earlier date the Knaubs bought the original home and the later date Rollison made the misrepresentation does not alter the *Mascio* calculation damages because both the actual value of the home on the purchase date in 2003 and the value of the home at the time the representation was made in 2007 are determined from the same point in time - the date the Knaubs purchased their original home in 2003. Because the *Mascio* standard is the appropriate standard based on the facts of this case, and the parties agree to its propriety, the Court shall apply this standard.

The parties stipulated the difference between the actual value of the Knaubs' home with its defects on the purchase date, and the purchase price paid by the Knaubs for the home believing it to be without defects, is $162,000. Thus, the Court concludes the Knaubs are entitled to $162,000, which represents the difference between the actual value of original home at the time of purchase with its defects and the value of the home they would have received if Rollison had fulfilled his promise to build them a replacement home of

---

*Id.* at 150 n.4.

[10] *Mascio*, *supra*, 454 B.R. 146 at 150 n.4.

[11] Order, Docket No. 58, at p. 6.

equivalent value to the one they had purchased in 2003, had it not been defective. Accordingly, the Court will enter judgment against Rollison and in favor of the Knaubs for false representations under § 523(a)(2)(A) for the total amount of $162,000.

    2.    *Post-Judgment Interest.*

Rollison does not dispute post-judgment interest at the statutory rate. Although the Knaubs request post-judgment interest at an annual rate of 8%, the Court finds 8% is not the appropriate rate under federal law. 28 U.S.C. § 1961(a) provides "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [ ] the date of the judgment." Therefore, post-judgment interest will run at the federal judgment interest rate under 28 U.S.C. § 1961.

    3.    *Prejudgment Interest.*

The Knaubs seek an award of prejudgment interest under COLO. REV. STAT. § 5-12-102(1), which provides in pertinent part as follows:

> (1) Except [in actions to recover damages for personal injuries], when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
>
> > (a) When money or property has been **wrongfully withheld**, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,
>
> > (b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property **after they are wrongfully withheld or after they become due** to the date of payment or to the date judgment is entered, whichever first occurs.[12]

In *Mesa Sand & Gravel*, the Colorado Supreme Court examined COLO. REV. STAT. § 5-12-102(1), and determined the phrase "wrongfully withheld" does not

---

[12] COLO. REV. STAT. § 5-12-102(1) (emphasis added).

require proof of tortious conduct on the part of the withholding party.[13] The *Mesa* Court then addressed whether a breach of contract was sufficient to show a party "wrongfully withheld" money or property, and held in a breach of contract action, the prevailing party may recover prejudgment interest with damages measured from the time of the breach.[14]

Later, in *Goodyear*, the Colorado Supreme Court clarified "wrongfully withheld" means "the aggrieved party lost or was deprived of something to which she was otherwise entitled."[15] The *Goodyear* Court also explained the limits of its *Mesa* decision:

> Some courts, including the court of appeals below, have subsequently understood *Mesa* to stand for the proposition that the "wrongful withholding" occurs on the date the party is "wronged." However, this reliance is misplaced, as we have never before had opportunity to address the distinction between the "wrong" and the point of "wrongful withholding." In contrast, the issue in *Mesa* was whether the prevailing party in a breach of contract case was entitled to recover prejudgment interest under section 5-12-102(1)(b).[16]

The Colorado Supreme Court noted "the distinction between 'wronged' and 'wrongfully withheld' did not affect the analysis in *Mesa* and the reference to the time of the 'wrong' was not, even implicitly, part of our holding in that case."[17]

In *Goodyear*, the Colorado Supreme Court determined the date a party is wronged is not always the same date money or property is wrongfully withheld. With respect to this distinction, the Court explained:

> The time when the plaintiff is "wronged" may or may not be the same time when the plaintiff's money or property is "wrongfully withheld."

---

[13] *Mesa Sand & Gravel*, 776 P.2d 362, 364-66 (Colo. 1989).

[14] *Id.* at 365.

[15] *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 825 (Colo. 2008) (internal citations omitted); *see also Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1097 (10th Cir. 2010) (noting the *Goodyear* Court's interpretation of "wrongfully withheld" under COLO. REV. STAT. § 5-12-102(1)).

[16] *Goodyear*, 193 P.3d at 825. In addition, the *Goodyear* Court explained *Mesa* concerned a breach of contract action where "the 'wrongful withholding' of the plaintiff's money or property occurs at the time of the breach, which is the same time when the plaintiff is 'wronged' by the defendant's breach." *Id.* at 826.

[17] *Id.*

> The plaintiff is wronged when he suffers an injury caused by the defendant. However, "wrongful withholding" occurs when plaintiff's injury is measured because the damages, if then paid, would make the plaintiff whole. Therefore, the date of the "wrong" is the same as the date of "wrongful withholding" only where the damages are measured as of the date of the injury. If, however, the damages are measured as of a date subsequent to the date of the injury, "wrongful withholding" occurs some time after the plaintiff was "wronged." Because section 5–12–102(1)(b) awards prejudgment interest from the date of "wrongful withholding," the prejudgment interest accrual date depends on the measure of damages insofar as different measures of damages may quantify the plaintiff's injury as of different dates.[18]

The *Goodyear* Court also carefully contrasted diminution of value cases (where the loss is measured as of the time of the injury to the property) to other property damage cases where the loss is measured "not at the time when the plaintiff suffered injury to his property, but at a later date when the plaintiff spends money to repair or obtain a replacement."[19]

In the instant matter, the Knaubs request an award of prejudgment interest under COLO. REV. STAT. § 5-12-102(1). As a preliminary matter, the Court notes counsel for the Knaubs conceded the Knaubs were not out-of-pocket for any repair costs. "When a plaintiff chooses to seek damages in the form of replacement costs incurred at some point subsequent to the wrong, the wrongful withholding occurs when the plaintiff undertakes the replacement expenditure and thus prejudgment interest begins to accrue on that date."[20]

---

[18] *Id.* at 827.

[19] *Id.* at 827-28. The *Goodyear* Court concluded:

> In short, the plaintiff does not suffer any time value of money loss until the time when she incurs the replacement costs, and, consequently, "wrongful withholding" of plaintiff's money or property occurs at that time. Thus, in replacement costs cases, "wrongful withholding" of the plaintiff's money or property occurs some time after the plaintiff is wronged.

*Id.* at 828.

[20] *Id.* at 830. The Colorado Supreme Court held as follows:

> [W]here the plaintiff recovers replacement costs damages, prejudgment interest accrues from the date when he incurred the replacement costs. Replacement costs damages are measured as of the date of replacement, which occurs some time after the plaintiff suffers an injury to his property. Therefore, the damages

Here, the Knaubs have not expended any funds for repairs or replacement of their purchased home. Thus, the Court finds prejudgment interest is improper under a replacement cost theory.

At the trial on damages, the Knaubs asserted prejudgment interest is proper because this case is a "diminution of value case" as described in *Mesa* and *Goodyear*. The Knaubs proposed two alternative dates from which prejudgment interest should accrue. First, the Knaubs seek prejudgment interest from the date they purchased the original home, based on a written contract. Alternatively, the Knaubs seek prejudgment interest from the date Rollison made the misrepresentation to the Knaubs. Rollison asserts any prejudgment interest is improper. The Court will address each of these arguments.

The Knaubs primarily seek an award of prejudgment interest from May 1, 2003, through May 15, 2012. The Knaubs assert the grounds for an award of prejudgment interest arise under the Contract to Buy and Sell dated March 18, 2003 (the "Contract").[21] The Knaubs purchased the subject home on May 1, 2003, under the terms of the Contract. Although courts typically look at the terms of the underlying contract to determine prejudgment interest, the subject Contract does not contain any provision for an award of prejudgment interest to the prevailing party. In the absence of an express interest arrangement in the Contract, the Knaubs requested interest at the Colorado statutory rate of 8% per annum. Under the Contract, the Knaubs assert May 1, 2003, is both the date the Knaubs were "wronged" and the date Rollison "wrongfully withheld" money from the Knaubs.

Rollison opposes an award of prejudgment interest under the Contract for two reasons: 1) Rollison is not a party to the Contract; and 2) the Contract executed in 2003 does not contemplate or relate to the representation made in

---

> award accounts for the time value of money between the time of the injury and the time at which damages are measured. Consequently, the plaintiff loses the time value of money only after he incurs the replacement costs. Therefore, the date when the plaintiff incurs the replacement costs is when his money or property is "wrongfully withheld," and prejudgment interest under section 5–12–102(1)(b) accrues from that date.

*Id.* at 823; *see also Hildebrand v. New Vista Homes II, LLC*, 252 P.3d 1159, 1173 (Colo. Ct. App. 2010) (discussing *Goodyear*, and concluding prejudgment interest was not appropriate because repair costs for property damage were prospective in nature and were wrongfully withheld as of the date of the verdict for damages under the Construction Defect Action Reform Act, COLO. REV. STAT. §§ 13-20-801 through 807).

[21] Knaubs' Exhibit 1.

2007. The Court agrees Rollison is not a party to the Contract. Although Rollison executed the Contract as an agent for seller Gemm Homes, LLC ("Gemm"), the Contract was between the Knaubs and Gemm, not Rollison individually.[22] In addition, the Court specifically found as follows in its previous Order:

> although the evidence presented at trial does not provide a basis for finding the corporate veils of either Gemm or Avalon should be pierced in this instance, and, indeed, this issue was not argued by the parties, **enough evidence exists as to Rollison's personal representations as to his ability to complete the project**, either through Gemm or Avalon, **to find debt arising from Rollison's individual misrepresentations to be nondischargeable**.[23]

The key is Rollison made personal misrepresentations in 2007 which caused damages to the Knaubs. The misrepresentations occurred long after the date the Contract was executed, and in any event Rollison was not a party to the Contract. Therefore, the Court finds the Knaubs are not entitled to prejudgment interest under the Contract. As a result, the May 1, 2003 purchase date under said Contract is not dispositive for the determination of prejudgment interest in this case.[24]

In the alternative, the Knaubs seek an award of prejudgment interest accruing at 8% calculated from the date of Rollison's misrepresentation, May 1, 2007, through May 15, 2012. Relying on *Goodyear* and *Mesa*, the Knaubs argue they are entitled to retroactive prejudgment interest accruing from the date Rollison made the misrepresentation regarding a replacement home, or the date of the wrong. On this theory, the Knaubs assert May 1, 2007, is both the date the Knaubs were "wronged" and the date Rollison "wrongfully withheld" property from the Knaubs. The Court does not agree.

Based on the Court's findings, the Knaubs were "wronged" on May 1, 2007, the date of Rollison's misrepresentation he would build the Knaubs a replacement home in the future. For the purposes of determining prejudgment interest, the Knaubs characterize this action as a diminution of value case, not a replacement cost case. Thus, the remaining prejudgment interest issue for this

---

[22] *See* Knaubs' Exhibit 1.

[23] Order, Docket No. 58, at p. 6 (emphasis added).

[24] In so finding, this Court does not make any determination on whether the Contract was breached by any party. The parties have not presented any evidence on that issue, and in any event, the issue is not before the Court.

Court to determine is when, if ever, did Rollison "wrongfully withhold" money or property in connection with his misrepresentation.

Neither of the parties presented evidence regarding when the replacement home was to be built, or even a time frame for construction of the replacement home. In the absence of any evidence regarding a date certain for replacing the home, the Court cannot determine a precise date, if any, when money or property was "wrongfully withheld." In other words, had a replacement home been constructed and the Knaubs been prohibited in some way from obtaining possession of the replacement home, then the Court would have some date certain as to when property was wrongfully withheld. We have no such evidence in this case. Therefore, the Court finds prejudgment interest accruing from the date of the misrepresentation is not appropriate.

Further, the Court finds additional independent grounds to deny prejudgment interest accruing from the date of the misrepresentation. Relying on *Howard v. Wood Bros. Homes, Inc.*, the Knaubs argue "Plaintiffs are entitled to interest from the time a cause of action accrues."[25] The Knaubs assert the latest date Rollison had notice of the existence of a claim was May 1, 2007, when the Knaubs complained of the structural issues in their home and Rollison promised to build a replacement home.

The Court finds the Knaubs' reliance on *Howard* problematic because the entire portion of the *Howard* opinion addressing prejudgment interest states only the following:

> Defendant also contends that the trial court erred in awarding pre-judgment interest from July 31, 1985. We disagree.
>
> Plaintiffs are entitled to interest from the time a cause of action accrues. *See Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo.1989).
>
> Here, evidence supports the trial court's determination that the action accrued when plaintiffs gave notice to [the defendant] of the existence of their claim and demanded recompense.
>
> We have considered defendant's other contentions of error and find them to be without merit.[26]

---

[25] *Howard v. Wood Bros. Homes, Inc.*, 835 P.2d 556, 560 (Colo. Ct. App. 1992) *aff'd in part, rev'd in part*, 862 P.2d 925 (Colo. 1993) (citing *Mesa Sand & Gravel*).

[26] *Id.*

Without any analysis, it appears the *Howard* case applied *Mesa* "for the proposition that the 'wrongful withholding' occurs on the date the party is 'wronged[,]'"[27] without examining the distinction between "wronged" and "wrongfully withheld." Presumably, the *Howard* Court found these dates to be one in the same. However, as the *Goodyear* Court stated, "the date of the 'wrong' is the same as the date of 'wrongful withholding' **only** where the damages are measured as of the date of the injury."[28]

As the Court determined above, the date of the wrong, or misrepresentation, was May 1, 2007. The misrepresentation was Rollison would build a replacement home for the Knaubs at some unknown point in the future. The parties agreed damages for Rollison's wrong should be measured under *Mascio*, which provides damages are measured by the difference between the actual value of the subject property at the time of purchase and its value at that time had the representation been true. The damages are not measured from the date of the injury to the Knaubs, which came later when Rollison failed to build the promised replacement home, and any wrongful withholding must have occurred on a different date after the misrepresentation was made. Therefore, the date of the wrong is not the same date as the date of the injury to the Knaubs.

In the absence of a written contract, without any out-of-pocket repair costs for the Knaubs, and without any evidence supporting a date certain for Rollison to build a replacement home, the Knaubs cannot recover prejudgment interest under COLO. REV. STAT. § 5-12-102(1). Therefore, the Court will not allow prejudgment interest in this case.

    4.    *Attorney fees and Costs.*

In *Cohen*, the Third Circuit Court of Appeals determined a debtor violated the New Jersey Consumer Fraud Act, and the resulting liability under state law for damages caused by the fraud "clearly represents a debt within the meaning of the bankruptcy code."[29] The United States Supreme Court affirmed, and held the liability flowing from a debtor's fraudulent behavior was nondischargeable pursuant to § 523(a)(2)(A).[30] The Court reasoned:

---

[27] *Goodyear*, 193 P.3d at 825.

[28] *Id.* at 827 (emphasis added).

[29] *Cohen v. de la Cruz*, 106 F.3d 52, 56 (3rd Cir. 1997), *aff'd, Cohen v. de la Cruz*, 523 U.S. 213 (1998).

[30] *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998); *see also In re Barber*, 326 B.R. 463, 467 (10th Cir. BAP 2005) stating as follows:

> In short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt . . . for money, property, services, or . . . credit, to the extent obtained by" fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, **including** treble damages, **attorney's fees**, and other relief that may exceed the value obtained by the debtor.[31]

However, the *Cohen* decision is tempered by the "American Rule" applicable to cases in federal courts – there must be a basis, in contract or statute, for a prevailing party to recover attorneys fees.[32]

Relying primarily on *In re Cohen*, the Knaubs seek an award of attorney fees and costs incurred in connection with the Contract. Indeed, the Contract contains a "Costs and Expenses" provision, providing "[i]n the event of any arbitration or litigation relating to this contract, the arbitrator or court shall award to the prevailing party all reasonable costs and expenses, including attorney fees."[33] The Knaubs rely solely on the Contract as their authority for fees, and do not rely on any independent Colorado statutory basis. The Court is unaware of any applicable Colorado statute for an award of attorney fees for real estate transactions.

---

As a matter of law, nondischargeable debt under § 523(a)(2)(A) is not limited to the actual value a debtor obtains through fraud, but includes punitive and compensatory damages. *Cohen v. de la Cruz*, 523 U.S. 213, 215, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). Therefore, when the bankruptcy court found that the debt was nondischargeable under § 523(a)(2)(A), it found that liability for all damages flowing from the fraud was nondischargeable.

[31] *Id.* (emphasis added).

[32] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975); *Fleischmann Distilling Corp. V. Maier Brewing Co.*, 386 U.S. 714 (1967). *See also In re Bertola*, 317 B.R. 95, 99-100 (9th Cir. BAP 2004) (noting post-*Cohen* "that a bankruptcy court could determine the 'debt' in a proceeding under § 523(a)(2)(A) to include attorneys' fees and costs. . . . Thus, if [the plaintiff] could recover attorneys' fees in a non-bankruptcy court on its action under § 523(a)(2), these fees will be recoverable."); *Owens v. Bolger (In re Bolger)*, 351 B.R. 165, 169 (Bankr. N.D. Okla. 2006) ("The majority of circuits hold that in Section 523 litigation, the 'American Rule' applies and a prevailing party cannot recover attorney's fees from the losing party unless that party would be entitled to such fees under an applicable statute or a valid contract to the extent such fees would be recoverable under state law.") (collecting cases).

[33] Knaubs' Exhibit 1, at p. 6, ¶ 20.c.

Rollison contends an award of attorney fees is improper under the American Rule because no contract existed between Rollison individually and the Knaubs. The Court agrees. Consistent with the Court's analysis above regarding prejudgment interest, the Contract was between the Knaubs and Gemm, not Rollison individually.[34] Although the Contract was executed by Rollison as an agent of Gemm, and the Contract provides for attorney fees and costs to the prevailing party, the Court cannot impute privity of contract where no such privity exists. Therefore, the Court finds an award of attorney fees and costs under the Contract is inappropriate in the instant matter.

Although there is no bankruptcy statute or rule specifically providing for attorney fees in the context of § 523(a)(2), and although the Court finds the subject Contract does not entitle the Knaubs to an award of attorney fees and costs, FED. R. BANKR. P. 7054(b) does provide for an award of costs to the prevailing party.[35] The Knaubs' Complaint requested an award for damages under § 523(a)(2)(A) "plus costs," which put Rollison on notice of the potential award of costs. Further, Rollison did not argue payment of costs were improper, and focused only on challenging an award of attorney fees. Thus, based on the facts of this case, the Court finds an award of costs is appropriate, and the Court will allow reimbursement of costs incurred by the Knaubs in connection with this proceeding.

   5.   *Total Judgment.*

The Court will enter a final judgment in this matter after the final determination of costs.

## CONCLUSION

For all of the foregoing reasons,

IT IS ORDERED the debt of Defendant Greg Rollison to Plaintiffs Kelvin and Holly Knaub in the principal amount of $162,000 is hereby found to be nondischargeable under 11 U.S.C. § 523(a)(2)(A).

---

[34] *See* Knaubs' Exhibit 1.

[35] FED. R. BANKR. P. 7054(b) states:

The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides. Costs against the United States, its officers and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice; on motion served within five days thereafter, the action of the clerk may be reviewed by the court.

      IT IS FURTHER ORDERED that JUDGMENT shall enter against Defendant Greg Rollison and in favor of Plaintiffs Kelvin and Holly Knaub in the amount of $162,000. Thereafter interest shall accrue on this sum as provided by 28 U.S.C. § 1961.

      IT IS FURTHER ORDERED that within fourteen (14) days from the date of this Order, the Plaintiffs Kelvin and Holly Knaub shall file a bill of costs containing their total expenses in connection with this adversary proceeding. Defendant Greg Rollison shall have fourteen (14) days thereafter to file any objection he may have to the Knaubs' bill of costs.

      Upon the Court's determination of allowable expenses, the Court will enter its final judgment in this matter. This Order is interlocutory and appeal deadlines will not begin to run until the Court's final judgment is entered.

Dated March 28, 2013              BY THE COURT:

                                               Michael E. Romero
                                               United States Bankruptcy Judge