IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 09-27801 HRT |
| GREG MATTHEW ROLLISON ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| ) | |
| KELVIN KNAUB ) | Adversary No. 10-1476 MER |
| HOLLY KNAUB ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| GREG MATTHEW ROLLISON ) | Signed/Docketed |
| ) | November 3, 2014 |
| Defendant. ) | |

**ORDER**

THIS MATTER comes before the Court on the Order issued by the United States Bankruptcy Appellate Panel of the Tenth Circuit on October 29, 2013 (the "BAP Order")[1] reversing this Court's Order determining damages dated March 28, 2013 (the "Damages Order").[2] Relying on *In re Mascio*[3] as binding

---

[1] *Knaub v. Rollison (In re Rollison)*, 500 B.R. 663, 2013 WL 5797861 (10th Cir. BAP Oct. 29, 2013) (unpublished decision) *appeal dismissed*, 2014 WL 1853020 (10th Cir. May 9, 2014) (concluding "the BAP's decision is not final. Consequently, we lack jurisdiction, and this appeal is dismissed.").

[2] *Knaub v. Rollison (In re Rollison)*, Adv. Proc. No. 10-01476 MER, 2013 WL 1305489 (Bankr. D. Colo. Mar. 28, 2013) (slip copy).

[3] *Gronewoller v. Mascio (In re Mascio)*, No. 06-CV-01780-PSF, 2007 WL 3407516 (D. Colo. 2007); *see also Gronewoller v. Mascio* (*In re Mascio*), 454 B.R. 146 (D. Colo. 2011). In *Mascio*, with respect to property regarding which fraud or misrepresentation has been shown, the United States District Court for the District of Colorado stated:

> Under Colorado law, [the plaintiff] is entitled to receive "the difference between the actual value of the property *at the time of purchase* and its value at that time had the representation been true." . . . Under Colorado law, values prior to or subsequent to the date of payment are irrelevant. . . . [I]t was error for the Bankruptcy Court to consider evidence of value at times other than the date of purchase.

precedent, this Court previously awarded Plaintiffs "benefit-of-the-bargain" damages in the stipulated amount of $162,000 resulting from Defendant's fraudulent promise in 2007 to rebuild Plaintiffs' home which was defective when purchased in 2003.[4]

On appeal, the BAP determined this Court erred in applying the "benefit-of-the-bargain" standard expounded in *Mascio*. The BAP remanded this matter for a determination of "out-of-pocket" damages incurred after Defendant's promise to build a new home was made in 2007 and caused by Plaintiffs' reliance on the Defendant performing that promise.[5] In applying the "out-of-pocket" standard, and based on the evidence presented at the remand trial, the Court finds the resulting nondischargeable damages award is only $17,293.16.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because it involves a determination as to the dischargeability of a particular debt under 11 U.S.C. § 523(a)(2)(A).[6]

---

*Id.* at 154; *see also In re Tani*, No. 09-17880-MER, 2012 WL 2071766 (Bankr. D. Colo. June 8, 2012) (applying the *Mascio* standards). Further, the District Court stated:

> Under Colorado law, "the measure of damages in [fraud] cases is the 'benefit of the bargain' rule, designed to give a plaintiff his or her expectation interest for loss of bargain." *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 n. 5 (Colo. 1994). Thus, a plaintiff is entitled to receive "the difference between the actual value of the property and what its value would have been had the representation been true." *Otis & Co. v. Grimes*, 97 Colo. 219, 48 P.2d 788, 791 (1935).

*Id.* at 150 n.4.

[4] *See* Damages Order.

[5] *Rollison*, 2013 WL 5797861, at *5.

[6] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

## BACKGROUND[7]

Debtor-Defendant Greg Rollison ("Rollison") filed his voluntary Chapter 7 petition on August 27, 2009. Plaintiffs Kelvin and Holly Knaub (the "Knaubs") filed the instant proceeding against Rollison on July 1, 2010. Later, the Court ordered the dischargeability claims would be heard first, with the damages portion, if necessary, to be heard at a later time. On May 15, 2012, the Court entered its written opinion determining *inter alia* the debt of Rollison to the Knaubs is nondischargeable under § 523(a)(2)(A) because it was based on false representations he made in 2007 regarding his ability to build a replacement home for one he had built for them in 2003, which had serious defects.

With respect to the bifurcated trial on damages, as the BAP noted:

Two months prior to the scheduled trial on the issue of damages, Debtor filed a motion *in limine* to limit evidence of the Knaubs' damages to only those that occurred after the Debtor's promise to rebuild. That motion was denied on the ground that the Knaubs' damages were governed by the "benefit of the bargain rule," as set forth in *In re Mascio*.[8]

Prior to the original damages trial, the parties stipulated to the following: 1) the Knaubs purchased the property at issue in this matter on May 1, 2003; and 2) at the relevant time, the difference between the actual value of the Knaubs' home, with its defects, on the date of the purchase of the home, and the purchase price paid by the Knaubs for the home believing it to be without defects is represented by the sum of $162,000.[9] The parties also stipulated to the admission of all exhibits previously admitted in the proceeding on dischargeability. In considering the stipulations of the parties, the findings of fact and conclusions of law in this Court's trial order dated May 15, 2012, and all exhibits, the Court entered the Damages Order.

On April 10, 2013, Rollison appealed the Damages Order. The BAP determined as follows:

---

[7] The Court previously set forth a detailed factual background in its Trial Order dated May 15, 2012 (Docket No. 59) and Damages Order dated March 28, 2013 (Docket No. 81). Therefore, a restatement of the facts is unnecessary, and the Court hereby incorporates all findings of fact from its Trial Order and Damages Order.

[8] BAP Order, at p. 4 (internal citations omitted).

[9] Joint Pre-Trial Statement (Docket No. 76).

[T]he "benefit of the bargain rule" does not apply absent proof of actual damage incurred as a result of the defendant's fraud. In the present case, the actual damage must have been caused by [Rollison's] fraudulent statement that he would build the Knaubs a new house. Simply stated, a promise made in 2007 could not have caused damages that were suffered by the Knaubs as a result of the sale to them of a defective house in 2003, as that damage was suffered long before [Rollison] promised to rebuild.

In addition, [Rollison's] promise was not a "bargain" upon which damages for benefit of the bargain could be based. "Bargain" is defined in Black's Law Dictionary as "[an] agreement between parties for the exchange of promises or performances." Thus, contract liability is based on mutual promises, while tort liability is not[.]

Nonetheless, as already noted, where one party to a contract uses fraud to gain an advantage, the other party to that contract may affirm the contract and recover benefit of the bargain damages in tort. But that principle necessarily only applies where fraud was the inducement to enter into a contract, or "bargain." Thus, had [Rollison] fraudulently induced the Knaubs' purchase of their house in 2003–a fact Knaubs' counsel admitted at oral argument did not apply here, they could have affirmed that purchase contract and recovered lost benefit of the bargain damages, in the amount of $162,000, in tort. Such damages would have been a debt owed to them by [Rollison] that "was obtained by" [Rollison's] fraud, and was therefore nondischargeable under § 523(a)(2)(A). However, the Knaubs did not allege fraud in the inducement of their 2003 purchase, nor did they enter into a new contract with the Debtor in 2007, since a contract requires mutual obligations. As such, there was no "bargain" reached in 2007 upon which to base the Knaubs' damages. Nor is there any authority for a court to grant benefit of the bargain damages based on an earlier contract that was not induced by fraud, which is essentially what the bankruptcy court did in this case.

Although benefit of the bargain damages were not appropriate in this case, the Knaubs may still be entitled to recover damages that were incurred as a result of [Rollison's] promise to rebuild. Any such damages must, however, be the proximate result of [Rollison's] promise in order to be recoverable. Therefore, the Knaubs may only recover damages that were incurred after [Rollison's] promise was

made, and that were caused by their reliance on [Rollison] performing that promise.[10]

## DISCUSSION

### A. Elements of Claims Under § 523(a)(2)(A)

Because the issue of damages is intertwined with the elements of § 523, a review of all the elements is instructive. Section 523(a)(2)(A) provides in pertinent part as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> . . .
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . .[11]

With respect to the nondischargeable debt owed by Rollison to the Knaubs, the Court held as follows:

> Accordingly, the Court finds Rollison made false representations as to his ability to perform on his agreement to build the Knaubs a replacement house, knowing such representations to be false, with the intent to deceive the Knaubs into believing such performance would take place. In addition, Mrs. Knaub's testimony indicates the Knaubs justifiably relied on the representations, because their previous

---

[10] BAP Order, at p. 6-7. *See also Knaub v. Rollison (In re Rollison)*, 2014 WL 1853020, at *1 (10th Cir. May 9, 2014), noting:

The BAP concluded that the proper measure of damages was the "out of pocket" method, which concerns damages arising after—and proximately caused by—Mr. Rollison's promise in 2007 to build them a new house. By way of example, the BAP posited that the Knaubs might be able to recover damages for losses based on their belief and expectation that Mr. Rollison would build the new house as promised, such as architect fees, soil tests, or materials purchased for upgrades. Observing that the bankruptcy court had taken no evidence on the amount of such damages, the BAP remanded for further consideration.

[11] § 523(a)(2)(A).

experience had shown willingness by Gemm or Avalon, at least following an attorney's letter, to attempt to fix their home's problems, and later to offer them a replacement home. Further, the Knaubs suffered damages, in an amount to be determined in the future, arising from problems with a defective home. Thus, as to Rollison, the Knaub's debt is nondischargeable under § 523(a)(2)(A).[12]

The Knaubs established each element of § 523(a)(2)(A), and the sole issue remanded to this Court is to determine the amount of "out-of-pocket" damages, if any.

### B. Calculation of Out-of-Pocket Damages

#### 1. *Out-of-Pocket Damages.*

At the remand trial, the Knaubs presented evidence of out-of-pocket damages incurred **after** Rollison's promise to build a new home was made in 2007. Based on the credible testimony of Ms. Knaub, the Court finds the following out-of-pocket damages were caused by their reliance on Rollison performing that promise.

First, the Knaubs presented unrebutted evidence regarding mileage and travel expenses related to Rollison's promise to build a replacement home after the misrepresentations were made in 2007. The standard mileage rate for 2007 for the use of a vehicle is 48.5 cents per mile.[13] All of the mileage damages relate to meetings and travel incurred in 2007 after Rollison's false representations were made.

According to Ms. Knaub, Rollison put an offer on a lot in Loveland to build a replacement home. In reliance on Rollison's promise to build a new home, the Knaubs attended two meetings with Rollison and four meetings with Mr. Cameron at their office in Loveland, Colorado to discuss the rebuild. The distance between the Knaubs home and Mr. Rollison's office is twenty miles, so the total mileage for these meetings is 120 miles. After the initial meetings, Rollison ceased communications with the Knaubs. In reliance on Rollison's promise to build a replacement home, but at a time when Rollison was not reachable, the Knaubs explored other potential properties to build a replacement home or for a trade. The Knaubs traveled another 353 miles visiting several potential replacement properties in Colorado and Wyoming. During their property visit in Laramie, Wyoming, the Knaubs also spent $20 on lunch. If not

---

[12] Order, Docket No. 58.

[13] *See* Plaintiffs' Exhibit 1.

for Rollison's representation to build a new home, the Knaubs would not have visited all of these properties or expended the $20 for lunch. Therefore, based on Ms. Knaub's testimony, the Court finds the Knaubs are entitled to out-of-pocket damages for accrued mileage in the total amount of $229.41 (473 miles x $0.485 cents) plus reimbursement of $20.

Second, the Knaubs, believing Rollison would perform as expected, hired legal counsel, Mr. Mulusky, to draft a demand letter to Rollison to get the home rebuild back on track. The fee for the letter was $75. The Court finds this fee was a loss incurred based on their belief Rollison would build them a new home.

Third, the Knaubs incurred additional out-of-pocket expenses for hiring an engineering consultant, CLT Thompson, to investigate the condition of their defective home, and to obtain an appraisal from Real Valu, Inc. The purpose of these expenses was to assess the cost to repair the defective home and obtain a value to assess the promised comparable replacement home. The grand total for the professional services of CTL Thompson was $14,968.75.[14] The total cost for the appraisal was $2,000.[15] The Knaubs also incurred these expenses based on their belief Rollison would build them a new home.

The Court also heard testimony concerning the Knaubs' liquidation of a trust fund, which was subject to a capital gains tax in the amount of approximately $6,000. Ms. Knaub testified she liquidated the trust fund because she anticipated a need for cash to apply towards a down-payment for a new property, a potential trade for a new property or for repairs on their defective home. However, Ms. Knaub offered no explanation of whether the funds were ever used for any of these purposes. Absent any causal link to Rollison's misrepresentations, the Court cannot award the amount of capital gains tax as an out-of-pocket expense.

In sum, the Court finds the Knaubs suffered out-of-pocket damages caused by their reliance on Rollison's promise to build a new home in the total amount of $17,293.16 ($229.41 + $20 + $75 + $14,968.75 +$2,000).

    2.    *Interest, Attorneys' Fees and Costs.*

At the remand trial, the Knaubs requested an award of postjudgment interest. The Court finds an award of post-judgment interest is appropriate. 28 U.S.C. § 1961(a) provides "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant

---

[14] *See* Plaintiff's Exhibit 2, CTL Thompson invoices.

[15] *See* Plaintiff's Exhibit 2, Real Valu, Inc. invoice.

maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [ ] the date of the judgment." Therefore, post-judgment interest will run at the federal judgment interest rate under 28 U.S.C. § 1961.

The Knaubs requested an award for costs as the prevailing party, in the amount previously allowed by this Court. In this case, the previously allowed costs under FED. R. BANKR. P. 7054 and 28 U.S.C. § 1920 totals $3,271.31. The Court finds the requested award is appropriate under FED. R. BANKR. P. 7054(b),[16] and the judgment shall reflect this award.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED the debt of Defendant Greg Rollison to Plaintiffs Kelvin and Holly Knaub is nondischargeable pursuant to § 523(a)(2)(A). A Final Judgment shall enter in favor of Plaintiffs and against Defendant in the amount of $17,293.16 for out-of-pocket damages, plus postjudgment interest accruing at the rate set forth in 28 U.S.C. § 1961, plus costs incurred in connection with this adversary proceeding in accordance with FED. R. BANKR.P. 7054 and 28 U.S.C. § 1920 in the allowed total amount of $3,271.31. Each party shall bear its own attorneys' fees.

Dated November 3, 2014　　　　　　　BY THE COURT:

_____
Hon. Michael E. Romero, Chief Judge
United States Bankruptcy Court

---

[16] FED. R. BANKR. P. 7054(b) states:

The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides. Costs against the United States, its officers and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice; on motion served within five days thereafter, the action of the clerk may be reviewed by the court.